UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROSEMARY BEEBIE,

                      Plaintiff,

v.                                                          8:19-CV-0102
                                                            (GTS/ATB)
BRIGHTHOUSE FIN., INC.; and BRIGHTHOUSE
LIFE INS. CO.,

                      Defendants,
_____

APPEARANCES:                                              OF COUNSEL:

WOOD, SEWARD & McGUIRE, LLP                 BENJAMIN C. McGUIRE, ESQ.
  Counsel for Plaintiff
8 Fremont Street
Gloversville, NY 12078

RIVKIN, RADLER LAW FIRM                            NORMAN L. TOLLE, ESQ.
  Counsel for Defendants
926 RXR Plaza
West Tower, 10th Floor
Uniondale, NY 11556

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently pending before the Court, in this insurance action filed by Rosemary Beebie ("Plaintiff") against Brighthouse Financial, Incorporated and the Brighthouse Life Insurance Company (collectively "Defendants") is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 25.) For the reasons set forth below, Defendants' motion for summary judgment is granted.

1

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint claims that (1) Defendants breached the Temporary Insurance Agreement ("TIA") by refusing to pay her late husband's temporary insurance policy, and (2) the lack of notice that the TIA had apparently been terminated, coupled with Defendants' failure to return the refund check until nineteen days after Plaintiff's late husband's death, led to Plaintiff's detrimental reliance that her husband's temporary life insurance policy was still in effect on the date of his death. (*See generally* Dkt. No. 12 [Plf.'s Compl.].) Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

### B. Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported with accurate citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in her response thereto or denied without appropriate record citations. (*Compare* Dkt. No. 28 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 32 [Plf.'s Rule 7.1 Response].)

1. Plaintiff's husband, Mr. Craig J. Beebie ("Mr. Beebie"), applied for a term life insurance policy, number 212127669, in the amount of $500,000 with First MetLife Investors Insurance Company ("FMLI").

2. On or about April 24, 2012, FMLI received a Life Express Order Ticket dated April 16, 2012, which included Mr. Beebie's life insurance application. On that same day, FMLI also received a check from Mr. Beebie for $271.00, $149.00 of

      which represented the deposit for and at least one-twelfth of an annual premium for his policy.

3.     Mr. Beebie received a TIA and receipt at the time of his application.

4.     The express terms of the TIA are as follows:

> Temporary Insurance on any person will end on the earliest of the following:
>
> 1. When coverage under a policy issued by the Company as a result of the tele-application takes effect.
> 2. When a policy issued by the Company as a result of the tele-application interview is not accepted.
> 3. When the Company offers to refund any payment received under this Receipt.
> 4. The date the Proposed Insured or the Applicant learns that either the tele-application has been declined or the Company has decided to terminate the Temporary Insurance, or five days from the date the Company mails to the Proposed Insured(s) or an Applicant, at the address provided, a notice that the tele-application has been declined or the Company has decided to terminate the Temporary Insurance.
> 5. One hundred and twenty (120) days from the end of the tele-application interview.
>
> If no policy takes effect, any payment received will be refunded when Temporary Insurance ends.

5.     The signatures section of the TIA states,

> I also affirm that I have read this entire Receipt and Agreement, and understand what Temporary Insurance provides, when Temporary Insurance starts, when Temporary Insurance ends, and who is eligible for Temporary Insurance.

6.     Mr. Beebie signed the TIA on April 16, 2012.

7.     On May 17, 2012, Mr. Beebie completed a telephone interview as part of the Application for Life Insurance.

8.     The Application for Life Insurance designated Plaintiff as the primary beneficiary of the proposed policy. It also provided that, "Except as stated in the [TIA], no

3

    insurance will take effect until a policy is delivered to the Owner and the full first premium due is paid."

9.  As part of its review, FMLI requested and received Mr. Beebie's medical records from Mr. David Pesses, M.D.  FMLI considered the information it received from Dr. Pesses in connection with its review of Mr. Beebie's application for life insurance.

10.  On September 19, 2012, FMLI declined Mr. Beebie's application for life insurance.  That same day, FMLI notified Mr. David Norton, Mr. Beebie's and Plaintiff's Financial Services Representative, of its determination to decline Mr. Beebie's application for life insurance.

11.  On September 22, 2012, Mr. Beebie died.

12.  FMLI never accepted Mr. Beebie's application to issue life insurance policy number 212127669.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts is assumed in this Decision and Order, which (again) is intended primarily for review by the parties. (*Id.*)

### C. Parties' Briefing on Defendants' Motion

Generally, in support of their motion for summary judgment, Defendants assert the following two arguments: (1) Defendants are entitled to summary judgment for Plaintiff's breach-of-contract claim because there was no temporary coverage in effect at the time of Mr. Beebie's death; and (2) Defendants are entitled to summary judgment on Plaintiff's equitable estoppel claim because (i) equitable estoppel cannot create coverage when no coverage exists, and (ii) Plaintiff's equitable estoppel claim fails as a matter of law because she cannot

demonstrate the threshold elements required under New York State law. (*See generally* Dkt. No. 29 [Defs.' Memo. of Law].)

Generally, in opposition to Defendants' motion, Plaintiff asserts the following three arguments: (1) Defendants' motion should be denied because, due to the ambiguities within the TIA, there is a question of fact as to whether the temporary coverage was in effect at the time of her husband's death; (2) Defendant's reliance on "120 day clock" in the Application for Life Insurance raises a question of fact as to the validity of the document because it was not properly executed or witnessed as required in the document itself; and (3) Defendant's motion for summary judgment on Plaintiff's second claim (for equitable estoppel) should be denied because there are genuine issues of material facts as they relate to that claim. (*See generally* Dkt. No. 33 [Plf.'s Opp'n Memo. of Law].)

Generally, in their reply, Defendants assert the following two arguments: (1) Plaintiff fails to raise a genuine issue of material fact regarding whether no temporary insurance existed when Mr. Beebie died because (i) the terms of the TIA are unambiguous as a matter of law, (ii) Plaintiff's interpretation of the TIA does not create an ambiguity in the TIA's language, and (iii) Plaintiff relies on speculation and irrelevant facts to create the illusion of a genuine issue of material fact; and (2) Plaintiff fails to raise a genuine issue of material fact with respect to her equitable estoppel claim because (i) equitable estoppel cannot create coverage when no coverage exists, and (ii) Plaintiff's equitable estoppel claim fails as a matter of law in that she cannot demonstrate the threshold elements of that claim under New York State law. (*See generally* Dkt. No. 36 [Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[2]

---

[1] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[2] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[3]  (This is because the Court extends special solicitude to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[4]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules.[5]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[3]   *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).
[4]   *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).
[5]   *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

7

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[6]–even where the non-movant was proceeding *pro se*.[7]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[8] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[6] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[7] *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

[8] *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

### III. ANALYSIS

#### A. Whether the Court Can Grant Summary Judgment for Defendants on Plaintiff's Breach-of-Contract Claim

After carefully considering the matter, the Court answers this question in the affirmative for one of the reasons stated in Defendants' memoranda of law. (Dkt. No. 29; Dkt. No. 36.) To this reason, the court adds the following analysis, which is intended to supplement, not supplant, Defendants' reasoning.

"Under New York law, insurance policies are interpreted according to the general rules of contract interpretation."[9] *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). "Where the parties dispute the meaning of particular contract clauses, the task of the court is to determine whether such clauses are [clear or] ambiguous when read in the context of the entire agreement." *Law Debenture Trust Co. of N.Y., v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("*Debenture Trust*") (quoting *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 [2d Cir. 1993]) (internal quotation marks omitted). A contract's language is clear when it provides "a definite and precise meaning, unattended by the danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 148 (2d Cir. 2017) (quoting *Hunt Ltd. V. Lifschultz Fast Freight, Inc.*, 889 F.3d 1274, 1277 [2d Cir. 1989]). "'Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation,' [*Hunt Ltd.*, 889 F.2d at 1277], unless each is a 'reasonable' interpretation." *Debenture Trust*, 595 F.3d at 467 (quoting *Seiden*

---

[9] Although the parties do not explicitly state that New York State law applies, the Court notes that both parties cite to New York law for the principles of contract interpretation throughout their respective briefs. (*See generally* Dkt. No. 29; Dkt. No. 33; Dkt. No. 36.)

9

*Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d, 425, 428 [2d Cir. 1992])." Ambiguity itself is not enough to preclude summary judgment; rather, there must also exist relevant extrinsic evidence of the parties' actual intent. *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994). "Ascertaining whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 257 (2d Cir. 2002) (citing *Mellon Bank*, 31 F.3d at 115). "Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous." *Lucente*, 310 F.3d at 257 (quoting *Mellon Bank*, 31 F.3d at 115).

Two rules are particularly relevant when interpreting a contract. *OneBeacon*, 864 F.3d at 147. "First, the 'words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.'" *Id.* at 147-48 (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 [2d Cir. 2005]). Stated another way, "the clear and explicit meaning of insurance policy provisions, interpreted in their ordinary and popular sense[,] controls judicial interpretation unless used by the parties in a technical sense or a special meaning is given to them by usage." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Corp.*, 363 F.3d 137, 147 (2d Cir. 2004) (internal quotation marks omitted).

"Second, contract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *OneBeacon*, 864 F.3d at 148 (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 [2d Cir 1996]) (internal quotation marks omitted). "Evidence as to such custom and usage is to be considered

by the court where necessary to understand the context in which the parties have used terms that are specialized." *Debenture Trust*, 595 F.3d at 466. "The trade usage must be 'so well settled, so uniformly acted upon, and so long continued as to raise a fair presumption that it was known to both contracting parties and that they contracted in reference thereto.'" *British Int'l Ins. Co., v. Seguros La Republica, S.A.*, 342 F.3d 78, 84 (2d Cir. 2003) (quoting *Reuters Ltd. v. Dow Jones Telerate, Inc*, 662 N.Y.S. 2d 450, 454 [1st Dep't 1997]).

> A custom, in order to become a part of a contract, must be so far established and so far known to the parties, that *it must be* supposed that their contract was made in reference to it. For this purpose the custom must be established, and not casual, *uniform and not varying, general and not personal*, and known to the parties.

*Debenture Trust*, 595 F.3d at 466 (emphasis in original) (quoting *Belasco Theatre Corp. v. Jelin Prods. Inc.*, 59 N.Y.S. 2d 42, 46 [1st Dep't 1945]). It is important to note that "[p]roof of custom and usage does not mean proof of the parties' subjective intent, for '[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous.'" *Id.* (quoting *Greenfield v. Phillies Records, Inc.*, 98 N.Y. 562, 569 [2002]).

### 1. Defendants' Offer to Refund

Here, the Court finds that a genuine dispute of material fact exists as to whether Mr. Beebie's temporary life insurance ended on or about August 24, 2012. "New York law holds that when . . . there is proof of the office procedure followed in a regular course of business, and these procedures establish the required notice has been properly addressed and mailed, a presumption arises that notice was received." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985). Denial of receipt alone does not rebut the presumption; there must be, in addition to denial of receipt, "some proof that the regular office practice was not followed or was carelessly

executed so that the presumption that notice was mailed becomes unreasonable." *Meckel*, 758 F.2d at 817.

In support of their position that Defendants issued a refund check to Mr. Beebie prior to his death, Defendants provide the Court with a copy of a check, dated August 24, 2012. (Dkt. No. 27-5, at 2.) However, Defendants do not provide any affidavits of mailing, certified mailings, return receipts, or any other proof of mailings in support of their position. Instead, Defendants' proof merely consists of a check that was dated "08/24/2012." (Dkt. No. 27-5.) Meanwhile, Plaintiff swears that neither she nor Mr. Beebie (to the extent she possesses the requisite personal knowledge) received any notifications or mailings of Defendants' offer to refund Mr. Beebie's payment for temporary insurance until more than two weeks after Mr. Beebies death. (Dkt. No. 31, at ⁋⁋ 19-20, 25, 28.) Moreover, on October 10, 2012, after Mr. Beebie's death, Plaintiff wrote a letter to Defendants' agent requesting Mr. Beebie's entire file. (*Id.* at ⁋ 24.) On October 11, 2012, Plaintiff received a first-class mailer from Defendants containing Defendants' refund checks. (*Id.* at ⁋⁋ 25, 27.) This conduct, coupled with the timing of Defendants' actions and first-class mailing to Plaintiff's correct address, rebuts the presumption that Plaintiff received the appropriate notice, and creates a genuine dispute of material fact as to whether Defendants' office procedure was followed in the regular course of business or was carelessly executed.

In addition, the Court is somewhat troubled by Defendants' interpretation of the refund provision of Section Four of the TIA. (Dkt. No. 27-3, at 3.) As read by Defendants, the section provides that insurance companies are able to terminate a person's temporary coverage, without any notice to the proposed insured. Such an insurance contract provision appears of dubious enforceability. This matters, of course, because Plaintiff has offered admissible record evidence

12

that she never received Defendants' refund, despite Defendants' attempt to offer proof that regular office mailing procedure was followed.  (Dkt. No. 31, at ¶¶ 18-20; Dkt. No. 27, at ¶ 11.) Moreover, Defendants' refund check states that "the attached check represents a refund due to the 120 day limit."  (Dkt. No. 27-5, at 2.)  Under the plain language of the TIA, the "120-day limit" is a separate ground for Defendants to terminate a person's temporary insurance.  (Dkt. No. 27-3, at 3.)  As discussed more in depth below in Part III.A.2. of this Decision and Order, 120 days from Mr. Beebie's May 17, 2012, tele-application interview was September 14, 2012. Simply stated, in the refund check, Defendants appear to have improperly conflated the two grounds for the purpose of terminating Mr. Beebie's temporary insurance on August 24, 2012.

For all of these reasons, the Court finds that Plaintiff has created a genuine dispute of material fact as to whether Defendants issued a refund on August 24, 2012, or after Mr. Beebie's death.

### 2. The 120-day Clock

Despite its findings above in Part III.A.1. of this Decision and Order, the Court nevertheless finds that Defendants are entitled to summary judgment based on the unambiguous language of another provision of the TIA.  "Under New York law, 'when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein,' and '[t]he words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12-13 (2d Cir. 2019) (quoting *Mazzola v. Cty. of Suffolk*, 533 N.Y.S. 2d 297, 297 [N.Y. App. Div., 2d Dep't 1988]).

On April 16, 2012, Mr. Beebie signed the TIA as part of the Life Express Order Ticket for policy number 212127669.  (Dkt. No. 27-2, at 9.)  In this case, although Plaintiff argues otherwise, the TIA's language is unambiguous.  Section Four outlines five different

13

circumstances pursuant to which temporary insurance coverage will end. (Dkt. No. 27-3, at 3.) In particular, the TIA's language clearly states that temporary coverage will end 120 days "from the end of the tele-application interview," not "120 days after the tele-application interview or after the medical exam, whichever is later." (Dkt. No. 27-3, at 3.) The Court notes that Section Four of the TIA does not contain additional language detailing an additional coverage period in the event of a required medical exam of proposed insured.

Moreover, the TIA's language does not state that the temporary insurance will end 120 days "from the issuance of coverage." The TIA's language makes specific references to the "tele-application" and the "tele-application interview" throughout the different sections, implying that the two phrases were intended to denote different actions. (*Id.* at 2-3.) When interpreted in the ordinary and popular sense, these distinctions clearly indicate that the term "tele-application interview" was not meant to be synonymous with the term "medical examination" or the tele-application itself. Even when read in context with the remaining sections of the TIA, the TIA's language does not provide the reasonable expectation that there is a 120-day temporary insurance period that starts as soon as the temporary coverage is issued. Accordingly, the term "tele-application interview" refers only to the phone interview itself, not the additional medical exam (which is required in only certain circumstances) or the overall tele-application.

Because Mr. Beebie completed the tele-application interview for life insurance on May 17, 2012, the TIA's 120-day "clock" began that day. [10] As asserted by Defendants, 120 days

---

[10] Plaintiff has failed to specifically controvert the fact that Mr. Beebie completed the tele-application interview on May 17, 2012. (*See* Dkt. No. 32, at ¶ 9 [declaring that Plaintiff neither admits nor denies that Mr. Beebie completed a tele-application interview on May 17, 2012].) *See also In re Horowitz*, 14-CV-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) ("[A] response contenting to neither admit or deny an allegation does not create a

from May 17, 2012, was September 14, 2012.  (Dkt. No. 28, at ⁋ 23.)  Mr. Beebie passed away on September 22, 2012.  (*Id.* at 21.)  For all of these reasons, Mr. Beebie was not covered by the TIA at the time of his death.

### 3. Mr. Beebie's "Voice Signature"

Plaintiff also argues that there is a triable issue of fact as to Mr. Beebie's tele-application interview date because Mr. Beebie's Application for Life Insurance ("Application") was "voice signed" and neither properly executed nor properly witnessed as required by the terms of the agreement.  (Dkt. No. 33, at 15-16.)  "The New York Court of Appeals "ha[s] long held that a contract may be valid even if it is not signed by the party to be charged, provided its subject matter does not implicate a statute . . . that imposes such a requirement."  *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 124 (2d Cir. 2011) (quoting *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y. 3d 363, 368 [2005]).  "As long as objective evidence of an intent to be bound exists, an unsigned contract may be enforced."  *Meloni v. RGM Distib., Inc.*, 201 F. Supp. 3d 360, 371 (E.D.N.Y. 2016) (citing *10 Ellicott Square*, 634 F.3d at 124).

Although the Court has not been able to find a New York or Second Circuit case permitting a "voice signature" to satisfy a contract or insurance policy, Plaintiff's logic is still flawed.  On May 25, 2012, Plaintiff, by her own admission, informed Defendants' agent that Mr. Beebie had completed the tele-application interview for the purpose of receiving life insurance.  (Dkt. No. 31-1.)  Mr. Beebie also submitted the required payments to apply for temporary

---

genuine issue of fact."); *Conway v. U.S. Postal Serv.*, 14-CV-0180, 2016 WL 1259412, at *1 n.1 (N.D.N.Y. Mar. 30, 2016) (Suddaby, C.J.) (finding that a response neither admitting nor denying certain facts does not comply with Local Rule 7.1[a][3] of the Local Rules of Practice for the Court and, therefore, are deemed admitted).  Because Defendants properly supported this fact in its Statement of Material Facts (Dkt. No. 28, at ⁋ 9), the Court finds that Mr. Beebie completed his tele-application interview on May 17, 2012.

coverage, as well as for the life insurance itself. (Dkt. No. 27-1.) When evaluating the totality of the circumstances, the Court finds that the objective evidence indicates Plaintiff and Mr. Beebie intended to be bound to the Application. Accordingly, even if Plaintiff's position was tenable because the Application was not properly executed, the Court finds that Defendant presented enough evidence to enforce the Application as a matter of law.

Additionally, Plaintiff admitted, through her response to Defendants' Statement of Material Facts, that Mr. Beebie completed the tele-application interview on May 17, 2012. As discussed more thoroughly in footnote 10 of this Decision and Order, Plaintiff failed to sufficiently controvert this fact pursuant to Local Rule 7.1(a)(3) of the Local Rules of Practice for the Court. Because Defendants properly supported this fact in its statement of material facts the Court finds that Mr. Beebie completed the tele-application interview on May 17, 2012. (Dkt. No. 28, at ¶ 9)

For all of these reasons, the court grants Defendants' motion for summary judgment with regards to Plaintiff's breach of contract cause of action.

### B. Whether the Court Should Grant Summary Judgment to Defendants for Plaintiff's Equitable Estoppel Claim

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated below.

In New York, the elements of the doctrine of equitable estoppel are as follows: (1) an *inducement* by the party to be estopped,[11] *substantial reliance* by the party seeking the

---

[11] *See Rose v. Spa Realty Assocs.*, 42 N.Y. 2d 338, 344 (1977) ("Once a party to a written agreement has *induced* another's significant and substantial reliance upon an oral modification, [that] party may be estopped from invoking the statute to bar proof of [the] oral modification."); *Metro. Life Ins. Co. v. Childs Co.*, 230 N.Y. 285, 292-93 (1921) ("An estoppel rests upon the *word or deed of one party* upon which another rightfully relies, and, so relying, changes his position to his injury.") (emphasis added), *accord*, *Nassau Trust Co. v. Montrose Concrete*

estoppel,[12] and (3) a resulting *detriment* to the party seeking the estoppel.[13]  Sometimes, the requirement that the reliance be *substantial* is replaced with a requirement that the reliance be

---

*Prods. Corp.*, 56 N.Y. 2d 175, 184 (1982), *Triple Cities Constr. Co. v. Md. Cas. Co.*, 4 N.Y. 2d 443, 448 (1958), *Lynn v. Lynn*, 302 N.Y. 193, 205 (1951).

[12]  *See Rose*, 42 N.Y. 2d at 344 ("Once a party to a written agreement has induced another's significant and *substantial reliance* upon an oral modification, [that] party may be estopped from invoking the statute to bar proof of [the] oral modification.") (emphasis added); *Isaacs Bus. Ventures, Inc. v. Thompson*, 636 N.Y.S. 2d 906, 908 (3d Dep't 1996) ("Likewise, defendants failed to adduce sufficient credible evidence showing that they *substantially relied* upon the oral modification to their detriment.  Accordingly, they failed to establish an estoppel . . . .") (emphasis added).

[13]  *See Metro. Life Ins. Co.*, 230 N.Y. at 292-93 ("An estoppel rests upon the word or deed of one party upon which another rightfully relies, and, so relying, *changes his position to his injury.*  When this occurs it would be inequitable to permit the first to enforce what would have been his rights under other circumstances.") (emphasis added), *accord, Nassau Trust Co.*, 56 N.Y. 2d at 184, *Triple Cities Constr. Co.*, 4 N.Y. 2d at 448, *Lynn*, 302 N.Y. at 205; *Fisk Bldg. Assocs. LLC v. Shimazaki II, Inc.*, 907 N.Y.S. 2d 2, 4 (1st Dep't 2010) ("As to their third affirmative defense, defendants did not show detrimental reliance, a necessary element of equitable estoppel."); *Town of Hempstead v. Inc. Vill. of Freeport*, 790 N.Y.S. 2d 518, 520 (2d Dep't 2005) ("To establish an estoppel, a party must prove that it relied upon another's actions, its reliance was justifiable, and that, in consequence of such reliance, *it prejudicially changed its position*.") (emphasis added); *Isaacs Bus. Ventures, Inc.*, 636 N.Y.S. 2d at 908 ("Likewise, defendants failed to adduce sufficient credible evidence showing that they substantially relied upon the oral modification *to their detriment.*  Accordingly, they failed to establish an estoppel . . . .") (emphasis added); *Chadirjian v. Kanian*, 506 N.Y.S. 2d 880, 882 (2d Dep't 1986) ("In order to establish a claim based upon equitable estoppel, a plaintiff must prove that her reliance upon the words or actions of the defendant was 'justifiable' and that in consequence of such reliance, she *prejudicially changed her position.*") (emphasis added); *The Savage Is Loose Co. v. United Artists Theatre*, 413 F. Supp. 555, 559 (S.D.N.Y. 1976) ("We agree that, if plaintiffs did subsequently modify the agreement, and defendant, in reliance on the modification, *changed his position to his injury* . . . then plaintiffs would be estopped . . . .  We stress that mere proof of oral modifications is insufficient to establish an estoppel; defendants . . . must prove that the plaintiffs caused defendants to act in a manner that would not otherwise have occurred but for the plaintiffs' conduct.") (citations and internal quotation marks omitted; emphasis added); *cf. Rose*, 42 N.Y. 2d at 344 ("Once a party to a written agreement has induced another's *significant* and substantial reliance upon an oral modification, [that] party may be estopped from invoking the statute to bar proof of [the] oral modification . . . .  [The] conduct relied upon to establish estoppel *must not be otherwise compatible with the agreement as written.*") (emphasis added), *accord, Cliffs Mgmt. Corp. v. Great E. Mgmt. Corp.*, 445 N.Y.S. 2d 460, 462 (1st Dep't 1981).

17

*justifiable*, *rightful*, or *reasonable*.[14]  Generally, equitable estoppel cannot be used to create insurance coverage where none exists.  *Federated Dept. Stores, Inc. v. Twin City Fir Ins. Co.*, 807 N.Y.S. 2d 62, 67 (1st Dep't 2006).

In this case, Plaintiff concedes that her second claim (for equitable estoppel) depends on whether Mr. Beebie had temporary insurance coverage at the time of his death.  (Dkt. No. 33, at 17.)  Although Plaintiff argues that she did not receive Defendants' refund check until after the date of Mr. Beebie's death, the language of the TIA does not state that temporary insurance coverage would continue until a refund was provided.  As discussed more thoroughly above in Part III.A.2. of this Decision and Order, the language of the TIA clearly indicated that the temporary insurance coverage would end 120 days from the date of the tele-application interview, which took place on May 17, 2012.  Accordingly, Plaintiff is unable to assert an equitable estoppel claim against Defendants because Mr. Beebie did not have temporary insurance at the time of his death.

---

[14]  *See, e.g., Nassau Trust Co.*, 56 N.Y. 2d at 184 ("An estoppel rests upon the word or deed of one party upon which another *rightfully* relies and so relying changes his position to his injury . . . .  It is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.") (internal quotation marks omitted; emphasis added), *accord, Syracuse Orthopedic Specialists, P.C. v. Hootnick*, 839 N.Y.S. 2d 897, 900 (4th Dep't 2007); *Town of Hempstead*, 790 N.Y.S. 2d at 520 ("To establish an estoppel, a party must prove that it relied upon another's actions, its reliance was *justifiable*, and that, in consequence of such reliance, it prejudicially changed its position.") (emphasis added); *Chadirjian*, 506 N.Y.S.2d at 882 ("In order to establish a claim based upon equitable estoppel, a plaintiff must prove that her reliance upon the words or actions of the defendant was 'justifiable' and that in consequence of such reliance, she prejudicially changed her position."); *Moore v. Cnty. of Rockland*, 596 N.Y.S.2d 908, 910 (3d Dep't 1993) ("Plaintiff cannot rely on an estoppel theory, as estoppel requires plaintiff's *reasonable* reliance upon a representation or act evincing defendants' position.") (emphasis added).

For this reason, Defendants are entitled to summary judgment for Plaintiff's second claim.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 12) is **DISMISSED**.

Dated: September 28, 2020
Syracuse, New York

_____
Glenn T. Suddaby
Chief U.S. District Judge